IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DALE J. KEEL,<br>　　　　　Plaintiff, | **MEMORANDUM OPINION AND<br>ORDER** |
| vs. | Case No. 2:12-CV-00168-BSJ |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Honorable Bruce S. Jenkins |

Plaintiff appeals the Commissioner of Social Security's decision denying his claims for

Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and

XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-33, 1381-1383f.  Having considered

the parties' briefs, the administrative record, the arguments of counsel, and the relevant law, the

Court AFFIRMS the Commissioner's decision.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI in August 2001 (Tr. 243-45, 265, 730-33).  His claims

were denied initially, on reconsideration, and, after a December 2003 administrative hearing, by

an administrative law judge (ALJ) on March 11, 2004 (Tr. 17-34, 207-08, 816-55).[1]

After the Appeals Council declined Plaintiff's request for review (Tr. 8-11), Plaintiff

filed suit in federal district court.  Plaintiff argued that: (1) the ALJ improperly disregarded

evidence from treating and other sources; (2) the ALJ erred in evaluating the credibility of

---

[1] Plaintiff had previously applied for DIB in April 1998 (Tr. 66-68); the claim was denied by an ALJ on September 21, 1999, and he did not appeal (Tr. 892-905).  *See* 20 C.F.R. § 404.955 (2012) (effect of ALJ decision).  He also applied for DIB and SSI in July 2000 (Tr. 246-48, 734-37); the claims were denied initially in December 2000, and he did not appeal (Tr. 209). *See* 20 C.F.R. §§ 404.905, 416.1405 (2012) (effect of initial determination).

Plaintiff's statements; and (3) the ALJ failed to resolve a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* (*DOT*)[2] (Tr. 909-10).  On September 10, 2007, the Honorable Ted Stewart held that the ALJ reasonably discounted opinions from treating sources Dr. White and Dr. Worthen and other sources Ms. Douthit and Mr. Wheeler (Tr. 910-14), and that the ALJ reasonably assessed credibility (Tr. 914).  However, the Court found that the ALJ failed to discuss an opinion from Dr. Smith (Tr. 912), and failed to resolve a conflict between the vocational expert's testimony and the *DOT* (Tr. 914-16).  Hence, the Court remanded the case for further proceedings (Tr. 906-17).

On remand, the Appeals Council assigned the case to an ALJ for further proceedings consistent with the Court's Order (Tr. 918-21).[3] The ALJ conducted an administrative hearing on May 5, 2008 (Tr. 925-69).  On June 10, 2008, the ALJ issued a decision denying Plaintiff's claims and finding that Plaintiff was not disabled at any time between September 22, 1999 and July 26, 2004 (Tr. 864-79).  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of this Court's review (Tr. 856-59).  *See* 20 C.F.R. § 422.210(a).[4] This appeal followed.

---

[2] U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed., rev. 1991).

[3] In its remand order, the Appeals Council noted a November 14, 2006 ALJ decision finding Plaintiff disabled as of July 26, 2004, based on a subsequent SSI application (Tr. 920).  The ALJ considered the November 2006 decision, but found that it addressed a different period of time and different evidence (Tr. 878).  In his reply brief, Plaintiff asked the Court to remand the case in light of the November 2006 award of benefits.  However, during oral argument, Plaintiff's counsel said Plaintiff was not relying on the November 2006 decision as a basis for remand.  In any event, Plaintiff waived any argument about the November 2006 decision because he did not raise it in his opening brief.  *Anderson v. Dep't of Labor*, 422 F.3d 1155, 1174, 1182 n.51 (10th Cir. 2005) (holding an issue not raised in the plaintiff's opening brief is waived).

[4] All citations to the Code of Federal Regulations (C.F.R.) are to the 2012 edition.

## STATEMENT OF RELEVANT LAW

**I.      Definition of disability under the Act**

The Act states that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  The disabling impairment must last, or be expected to last, for at least 12 consecutive months.  *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

**II.      Process for determining disability under the Act**

To determine whether a claimant is disabled, Social Security regulations set forth a five-step sequential evaluation process.  That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met or medically equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4).  If a decision regarding the claimant's disability can be reached at any step in the sequential evaluation process, further evaluation is unnecessary.  *See* 20 C.F.R. § 404.1520(a)(4).

**III.      Standard of review**

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation and citation omitted).  The Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ.  *Id.*  Where the evidence as a whole can

support either the agency's decision or an award of benefits, the agency's decision must be affirmed. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

**DISCUSSION**

**I      The ALJ's decision was supported by substantial evidence and free of legal error.**

**A.      The ALJ reasonably evaluated Dr. Smith's opinions.**

The 2004 ALJ decision did not discuss or discount Dr. Smith's opinions (Tr. 20-34, 912). On remand, the ALJ explicitly considered Dr. Smith's opinions (Tr. 874-76). The ALJ complied with remand order, as discussed in more detail below.

Under governing law, "an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. 1527(d));[5] *see also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5. The decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins,* 350 F.3d at 1300 (citing SSR 96-2p).

There is a guiding framework that an ALJ should follow when dealing with treating source medical opinions related to the nature and severity of a claimant's impairments. *Watkins,* 350 F.3d at 1300. To begin, an ALJ should generally give more weight to medical opinions from treating sources than to those from non-treating sources. *Id.* When deciding how much weight to accord a treating source opinion, an ALJ must determine whether the opinion qualifies for "controlling weight." *Id.* "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source." *Id.* (citing SSR 96-2p). Instead, to determine whether the opinion merits controlling weight, the ALJ must first consider whether the opinion is

---

[5]  Until March 2012, the factors were listed in 20 C.F.R. § 404.1527(d). In March, the regulation was modified and is now § 404.1527(c). Similarly, the prior § 404.1527(e) is now § 404.1527(d), and the prior § 404.1527(f) is now § 404.1527(e). There was no substantive change. *See* 77 Fed. Reg. 10,651, 10,656-57 (Feb. 23, 2012).

-4-

well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Watkins,* 350 F.3d at 1300. If it is not, this particular inquiry ends. *Id.* If, however, the ALJ finds that the opinion is well-supported, he must confirm that the opinion is also consistent with other substantial evidence in the record. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

Determining that the opinion is not entitled to "controlling weight" does not end the ALJ's analysis, as he must still decide what weight to accord the opinion, if any. A treating source opinion that is not entitled to controlling weight must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. *Watkins,* 350 F.3d at 1300-01. The ALJ is not required to "apply expressly" all the relevant factors when determining the weight of a medical opinion. *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). Nor does the ALJ need to formulaically articulate the detailed analysis of each factor. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ must identify "good reasons" for the weight assigned to the treating source opinion. *Watkins,* 350 F.3d at 1301. To reject the opinion entirely, he must give "specific, legitimate reasons" for doing so. *Id.*

This Court finds that the ALJ's decision to discount Dr. Smith's opinions comports with the principles above. "[E]xaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter to be taken lightly." *Gossett v. Bowen,* 862 F.2d 802, 807 (10th Cir. 1988) (quotation and citation omitted). In light of evidence that Plaintiff exaggerated his symptoms during physical and mental examinations, it was reasonable for the ALJ to find that Dr. Smith's opinions were not well-supported to the extent that they relied on Plaintiff's presentation and reports (Tr. 872 (citing Tr. 28-30), 876; *accord* Tr. 585, 650). *See* 20 C.F.R. §§ 404.1527(c)(2) (ALJ may only give treating source opinion controlling weight if it is well-supported by medically acceptable clinical and diagnostic techniques), 404.1527(c)(3) (in weighing medical source opinion, ALJ must consider support for opinion); *Oldham*, 509 F.3d at

1257 ("Based on the evidence indicating Ms. Oldham's propensity to exaggerate her symptoms and manipulate test results, the ALJ refused to credit opinions of treating and examining medical providers that depended on Ms. Oldham's veracity.").

The ALJ also reasonably found that Dr. Smith's opinions were contradicted by evidence that, although Plaintiff's symptoms had reportedly been present for 10 to 15 years, Plaintiff worked for much of that time as a city service worker (Tr. 875-76; *accord* Tr. 88, 559, 579). *See* 20 C.F.R. §§ 404.1527(c)(2) (ALJ may only give treating source opinion controlling weight if is it is not inconsistent with other substantial evidence in the record), 404.1527(c)(4) (in weighing medical source opinion, ALJ must consider consistency with the record); *Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008) ("The ALJ found that Mr. Cowan 'previously worked with these [longstanding] impairments, which suggests these conditions would not currently prevent work.'").

The ALJ further found that Dr. Smith's opinions were not supported by or consistent with the treatment record, which showed that, although Plaintiff did not always take his medication as prescribed, his symptoms improved with treatment and he was able to get out in public to some degree (Tr. 871, 874-75; *accord* Tr. 571).  *See* 20 C.F.R. §§ 404.1527(c)(2) (ALJ may only give treating source opinion controlling weight if it well-supported and is not inconsistent with other substantial evidence in the record), 404.1527(c)(3) (in weighing medical source opinion, ALJ must consider support for opinion), 404.1527(c)(4) (in weighing medical source opinion, ALJ must consider consistency with the record); *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence).  While the ALJ held that Plaintiff should have minimal interaction with others (Tr. 868-69), the ALJ reasonably found that Plaintiff's activities—which included going to the library, attending a concert, attending church, and visiting with friends—were inconsistent

with Dr. Smith's opinion about extreme social anxiety which would preclude all work activity (Tr. 875; *accord* Tr. 354, 470, 500, 559-60, 693, 696).

Plaintiff argues that, in light of his mental impairment, it was error for the ALJ to consider his noncompliance. But, Social Security regulations require an ALJ to consider a claimant's compliance with his treatment regimen. *See* 20 C.F.R. §§ 404.1527(c)(4) (ALJ must consider consistency of opinion with the record as a whole), 404.1529(c)(v), (vi) (ALJ must consider treatment prescribed and measures used by claimant for relief of symptoms); *see also Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012) (holding that a claimant's failure to follow prescribed treatment is a valid consideration even in the context of mental impairments). Here, the evidence did not overwhelmingly show Plaintiff's resistance was attributable to his mental impairment rather than his own personal preference. *See Molina,* 674 F.3d at 1114 (distinguishing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009), on the grounds that, in *Pate-Fires*, the evidence overwhelmingly demonstrated that the claimant's noncompliance was attributable to mental illness)). Dr. Smith found Plaintiff had logical and linear thought processes and intact judgment and insight (Tr. 581). Moreover, the record showed that Plaintiff exaggerated his symptoms (Tr. 876; *accord* Tr. 585). Indeed, Plaintiff rejected Dr. Worthen's recommendation that he participate in vocational rehabilitation, stating "that he does not wish to do so. . . . What he does want is his disability" (Tr. 872 (citing Tr. 29); *accord* Tr. 556). In light of this record, substantial evidence supports a finding that Plaintiff's noncompliance was based on his personal preference, not based on a mental impairment (Tr. 875-76). *See Molina*, 674 F.3d at 1114.

Plaintiff argues that Dr. Smith's opinion is bolstered by other opinions in the record. Although the ALJ's residual functional capacity finding need not correspond with a medical source opinion, the ALJ's finding in this case is supported by the opinions of two reviewing state agency doctors (Tr. 602, 641). *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)

("the ALJ, not a physician, is charged with determining a claimant's [residual functional capacity] from the medical record"); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider).

In any event, Plaintiff's request to re-weigh the evidence is unavailing. *See Lax*, 489 F.3d at 1084 ("We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)).  The Court previously held that the ALJ reasonably discounted opinions from Dr. Worthen and Ms. Douthit (Tr. 912-13), and Plaintiff did not submit any additional medical evidence on remand (Tr. 927).  Hence, the ALJ reasonably incorporated the same valid reasons for discounting their opinions into his 2008 decision (Tr. 873-74 (citing Tr. 26-27, 29)).  *Poppa v. Astrue,* 569 F.3d 1167, 1170 (10th Cir. 2009) (law of the case doctrine applies to issues previously decided).  To the extent that Plaintiff relies on information in reports from examining sources Dr. Carlisle and Dr. Chamberlain, the ALJ reasonably found that Plaintiff's presentation and reports during examinations were not reliable (Tr. 876).  *See* 20 C.F.R. § 404.1527(c)(3) (in weighing medical source opinion, ALJ must consider support for opinion); *Oldham*, 509 F.3d at 1257 ("Based on the evidence indicating Ms. Oldham's propensity to exaggerate her symptoms and manipulate test results, the ALJ refused to credit opinions of treating and examining medical providers that depended on Ms. Oldham's veracity.").

Plaintiff also argues that his own statements, and similar statements from his wife, bolster Dr. Smith's opinions (Pl. Br. 20-21).  However, the Court previously held that the ALJ reasonably discounted Plaintiff's assertions (Tr. 914).  The ALJ adopted the prior valid findings regarding credibility, (Tr. 872 (citing Tr. 28-30)), and also gave other valid reasons for discounting statements from Plaintiff and his wife, finding:

- the record contained evidence that Plaintiff exaggerated his symptoms (Tr. 872 (citing Tr. 28-30); *accord* Tr. 585, 650);[6]

- although Plaintiff and his wife testified that Plaintiff had extreme limitations in functioning such that he sat in a recliner all day, physical examination showed no sign of diminished strength or atrophy in his legs (Tr. 872; *accord* Tr. 585);[7]

- although Plaintiff did not always take his psychiatric medication as prescribed, his symptoms improved with treatment and he was able to get out in public to some degree (Tr. 871, 875; *accord* Tr. 354, 470, 500, 559-60, 571, 693, 696);[8]

- despite his longstanding anxiety, Plaintiff worked for a number of years as a city service worker (Tr. 876; *accord* Tr. 579);[9]

- although Plaintiff rated his pain during the 2003 administrative hearing as an eight out of 10 and was under the influence of pain medication at the time of the hearing, he understood and responded appropriately to the questions posed (Tr. 871; *accord* Tr. 836-37);[10]

---

[6] 20 C.F.R. § 404.1529(c)(4) (in evaluating a claimant's credibility, an ALJ must consider inconsistencies in the evidence); SSR 06-03p, 2006 WL 2329939, at *4 (in evaluating a lay witness statement, ALJ should consider consistency with other evidence); *Wall v. Astrue*, 561 F.3d 1048, 1069-70 (10th Cir. 2009) (ALJ reasonably discounted claimant's statements in light of evidence of malingering and misrepresentation).

[7] 20 C.F.R. § 404.1529(c)(4)); SSR 06-03p, 2006 WL 2329939, at *4; *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence").

[8] 20 C.F.R. § 404.1529(c)(4); SSR 06-03p, 2006 WL 2329939, at *4; *White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2001) (evidence claimant's symptoms responded to treatment supported finding that her impairments were not disabling).

[9] 20 C.F.R. § 404.1529(c)(4); SSR 06-03p, 2006 WL 2329939, at *4; *Cowan*, 552 F.3d at 1191 ("The ALJ found that Mr. Cowan 'previously worked with these [longstanding] impairments, which suggests these conditions would not currently prevent work'").

[10] SSR 96-7p, 1996 WL 374186, at *5 ("In instances where the individual attends an administrative hearing conducted by the adjudicator, the adjudicator may also consider his or her

·     Mrs. Keel's testimony that she sometimes needed to remind Plaintiff to take his pain medication seemed inconsistent with Plaintiff's assertions about disabling pain (Tr. 872; *compare* Tr. 936 *with* Tr. 945);[11] and

·     even if testimony that Plaintiff became distracted or lost his ability to concentrate after one hour was credited, this testimony was not inconsistent with the ability to do unskilled work (Tr. 873; *see* 948).[12]

In sum, the ALJ identified good, specific, and legitimate reasons for discounting Dr. Smith's opinion, which were supported by substantial evidence.  Because the ALJ did not err in discounting Dr. Smith's opinion, the ALJ's decision is affirmed.

**B.**     **The ALJ reasonably found, at step five, that Plaintiff could do jobs that exist in significant numbers in the national economy.**

The 2004 ALJ decision included limitations to a "low memory" level, but did not specify GED levels at which Plaintiff could work (Tr. 31),  nor did the ALJ include GED levels in his hypothetical to the vocational expert (Tr. 849-51).  In remanding the case, the Court held that, "if the ALJ incorporated reasoning levels into Plaintiff's RFC, as he did here, to adequately find unskilled jobs to answer the ALJ's hypothetical at step five, such jobs must have been consistent with Plaintiff's RFC in light of the GED levels found in the DOT" (Tr. 916).  On remand, the ALJ explicitly found that Plaintiff could do simple work utilizing GED levels of at least Reasoning 1, Math 1, and Language 1, and included these limitations in his hypothetical to the vocational expert (Tr. 869, 958).  Hence, the ALJ complied with the remand order.

---

own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."); *Qualls*, 206 F.3d at 1373 ("Although an ALJ may not rely solely on his personal observations to discredit a claimant's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility.").

[11] SSR 06-03p, 2006 WL 2329939, at *4.

[12] 20 C.F.R. § 404.1568(a) (defining unskilled work); SSR 96-9p, 1996 WL 374185, at *9 (same).

Plaintiff does not argue that the ALJ failed to follow the Court's instructions on remand. Instead, Plaintiff claims that the ALJ did not identify a significant number of jobs that exist in the national economy (Pl. Br. 21-24). However, the ALJ's decision comported with the applicable regulations and case law. *See* 20 C.F.R. § 404.1566(c)(2) ("[w]e will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of . . . [l]ack of work in your local area"); *Raymond,* 621 F.3d at 1274 ("The controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy."). The vocational expert testified that there are 12,500 nut sorter jobs, 17,500 dowel inspector jobs, and 40,000 final assembler jobs in the national economy (representing 50% reductions in the total number of these jobs to account for the limitations in the hypothetical) (Tr. 958-60). These numbers reflect a significant number of jobs. *See, e.g., Rogers v. Astrue,* 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) (11,000 jobs in the national economy was substantial evidence to support a determination of nondisability). Hence, the ALJ's decision is affirmed.

## CONCLUSION

Having determined that the Commissioner's decision is supported by substantial evidence and free from legal error, the Commissioner's decision is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer,* 509 U.S. 292, 296-304 (1993).

       It is so ordered.

       Dated this 20th day of December, 2012.

BRUCE S. JENKINS
UNITED STATES DISTRICT COURT JUDGE